Good morning, ladies and gentlemen. I opened it the way I opened it the last time I sat, which was a couple of weeks ago. Go Cubbies! Home of the World Series. The Chicago World Series champions. All right. This morning, the first case... Oh, the... Judge Feinerman from the District Court, North District of Illinois, is with us, and we're very pleased about that, too. Thank you. So, we'll proceed with the first case, which is Wine & Canvas Development v. Theodore Weisser. Mr. Davis. Thank you, Your Honor. My name is Adam Davis. I'm here on behalf of the appellants. Our appeal is basically based on a series of errors, each of which we believe constitutes reversible error on appeal. But collectively, we believe coalesce to bring about an unfair trial on behalf of the appellants. In this case, the background is that Wine & Canvas hosts painting events. They have customers that come in. They paint a painting. They drink alcohol. And they started licensing this concept. The person that they used to license the concept... Pardon me. Did I understand you to begin by saying that there's no single reason to reverse, but collectively there is? No. We believe that each reason, in and of itself, is a reasonable reversal. Is sufficient. Is sufficient. Those are basically, I believe, broken down into three steps. There's the pre-summary judgment errors. There's the summary judgment errors. And then there's the errors at trial. I think the easiest ones to go over first would be the summary judgment errors. The first summary judgment error was... Well, let me take you off the way you want to go about it. Let's talk about sanctions for a minute. Yes, sir. I understand that there were sort of two different orders and could conceivably be seen as inconsistent. But wasn't there a reconsideration decision that was made later? Not exactly. There was an order that was issued originally, which we refer to in our brief as the first itemization order. Basically what happened is opposing counsel sent over interrogatories. Those were responded to. However, they filed a motion to compel. And in that motion to compel, they said that there was a failure to respond to the only example that they provided was a failure to provide an itemization of damages, statement of damages. Our response in the interrogatories was simply that we can't determine what our damages are because they're based on your gross sales. It's a percentage of the gross sales, and those haven't been produced yet. When we responded to the motion to compel, we stated that we can't produce what we don't have, and the judge issued sanctions. However, about four months later, after we were still trying to get the financial documents in order to do the itemization of damages, opposing counsel again filed a second motion to compel on the exact same grounds. In that second motion to compel, we responded the exact same way. We said we can't produce what we don't have. One of the arguments, by the way, is that Mr. Muell at that time was represented by Mr. Wachikowski, who sits to my right, and Mr. Weiser had no counsel, and the argument was that Mr. Weiser was the one that had all the financial documents, so he couldn't get them from Mr. Muell. It was a back and forth. In any event, the judge came down on that decision and said that they must agree with the plaintiffs. They can't produce what they don't have. After that ruling, we asked the court to reconsider the first itemization order because it seemed to be on par. Opposing counsel argues that that first itemization order was issued for something beyond a failure to produce an itemization of damages, but that first order specifically states that the only example that was provided by opposing counsel in their motion to compel was the itemization of damages issue. Now, we would never appeal to the Seventh Circuit for damages relating to an itemization issue. What happened in this case was that every single step snowballed into an eventual abusive process. There was late filings, not very long, but late. We're not appealing any of those, any of the sanctions. The only other sanctions that were issued in this case were issued by agreement of the parties. For example, there was an issue with regard to some privacy concerns. We asked the judge to not allow those to be done in deposition. The judge agreed, so long as we agreed that in the event the judge were to make a decision that those were going to be allowed in a later deposition, that we would pay those fees. We agreed. And early on in the beginning of the case, we did have some late discovery, and I voluntarily agreed to pay those. But this sanction order itself is relevant because it is a series of dominoes that eventually led the jury to believe that we filed nothing but meritless motions, we clogged the docket, and that none of our claims had merit. And that none of our claims have merit, that has root in the summary judgment motion. In the summary judgment motion, I refer to it as a negative motion. You know, you can move for a motion for summary judgment, and if you do that, you either designate evidence, or if you're not the party that bears the burden at trial, you can say that they lack evidence. It's a lack of evidence approach. And on summary judgment, that's what they did for many of the claims. So, for example, they would say our trademark infringement claim fails because we lack evidence of the likelihood of confusion. So in our response brief, we would brief that we do have evidence of a likelihood of confusion. But all of a sudden, when the MSJ order comes out, issues are raised by the judge that sui sponte, that were never raised in the briefing, that were never carried, that the plaintiff never carried the burden on it. And the rule is that while a judge is allowed to raise issues sui sponte, they can't raise them if the other side is not on notice that those issues were to be argued in the case. So, for example, the conversion claim. The judge said that we failed to show evidence of a pecuniary loss. However, the plaintiff's brief never raised evidence of a pecuniary loss. Another example is, for example, and this is just one of the themes, but this thing permeates much of the summary judgment order. Another example would be the claim for unfair competition. Now, there's two issues with that. The related issue is the only issue raised by opposing counsel was likelihood of confusion. We briefed the issue of likelihood of confusion with the trademark infringement, which we overcame on summary judgment. However, and the court found that there was evidence of a likelihood of confusion instead of. So we briefed that, and then the court comes back and says that we never responded to the unfair competition claim. Now, the only issue, again, raised by opposing counsel was the likelihood of confusion. We briefed that, and the court said we failed to address all the other elements. That fails for two reasons. First, we're not required to address all the other elements. And second of all, the court seems to just simply be mistaken here. They believe that we never addressed unfair competition, but it's clearly in the brief that we addressed it. We addressed it in the brief. We addressed it in the reply brief. Another major issue in the summary judgment process, for example, is the abusive process claim itself. Abusive process, and this is really the crux of the entire case. Abusive process, a lot of people will often say abusive process means that you filed a meritless case. Well, that's not what it means. You can have the most merit of any case ever, but if you abuse the process along the way, you use it for a purpose other than achieving a judgment, you commit an abusive process. It doesn't matter if you enjoy suing the other person. It doesn't matter if you want to see them suffer. Of course, that's not what we did. That's the argument that opposing counsel made. All that matters is did you use legal process properly, and if you did, then the motive is secondary. It's not even analyzed. The motive is irrelevant if you use proper process. So in this case, they failed to identify a single improper. Well, the best example I can give is that if you were to request that the other side produce a needle and they were to produce it in a haystack, that would be an abuse of process. That would be an act using the legal process for no other reason than to cause injury or damage to the other side. There was no evidence in this case presented to the jury whatsoever that the plaintiffs in this case committed any abuse of process with the exception of two items. Number one, and we're kind of jumping forward, but the first item is because of the judge's summary judgment ruling, which we believe was an error, which required us to do three things, by the way. We filed a motion to reconsider. It was a month before the trial, so we asked that the trial be stayed so that we could appeal this issue rather than go to trial, appeal it, and then have to have a new trial. So we tried everything in our arsenal to avoid the pains of what we would have to deal with if the trial were to go forward without these claims. In any event, opposing counsel asked for a judicial notice right before the trial, finding that we've clogged the docket, that all of our claims were meritless, and the judge entered that ruling over stringent objection. However, on the third to last day of the trial, day three or four, the judge finally read our motion for reconsideration, and based on the exact same arguments that are the basis of every error identified in the summary judgment motion, she struck the judicial finding. However, by then it was too late. Now, opposing counsel will say to you that the judicial finding was done in opening arguments, and your mouth gets really dry up here. I apologize. The arguments were that those statements were made in opening arguments and that there's an instruction that says that opening arguments are not evidence and that that instruction is supposed to secure for any prejudice to the jury. However, that is usually the case except for when the judge specifically tells the jury that it is evidence. They don't need any more evidence on it, and that's what happened in this case. The judge instructed the jury, as did Mr. and Mr. Wachikowski, reminded them that this judicial finding, that our claims were meritless, that we clogged the docket with meritless motions, that that was evidence in the case, and that severely prejudiced us. At the end of the day, this case to the jury was about credibility. Who do you believe? Do you believe Mr. Mile, or do you believe Wine and Canvas? Wine and Canvas had a trademark infringement left at the claim left, and Mr. Muell only had one claim left, too. All of his other claims were beat. His cancellation claim was beat finally about a month before trial, and the jury had to decide, who do they believe more? Do they believe Mr. Mile, or do they believe Wine and Canvas, who the court just said that all their motions were meritless, that they clogged the court? Then, to make matters worse, opposing counsel in opening arguments disclosed private settlement negotiations. We objected. We went up to the judge. The judge asked if they were private settlement negotiations. Both sides admitted that they were, and the judge actually sustained our objection. However, Mr. Wachikowski said that it's critical to their abusive process claim that that evidence get in. The judge sustained our objection again. However, immediately, somehow, at the ready, Mr. Wachikowski had a printed-up case from a district court in the Sixth Circuit that was issued about 10 months before the trial began, and in that case, a Sixth Circuit court judge said that you can use settlement negotiations to prove liability of an ulterior motive under an abusive process claim. We pleaded with the court that this case had never been appealed, that every other circuit found essentially the opposite way. In fact, there is a case in the Southern District of Pennsylvania that's directly on point, and it states that This is called the Scioli v. Arevani case, 625 Federal Supplement, 2nd edition, 276, and at page 288, the court states, Part of an effective settlement process is a frank discussion of the relative merits of each party's case. If parties were permitted to take the content of these negotiations and use them in subsequent litigation for wrongful initiation of civil proceedings or abusive process, then counsel would put themselves and their clients at risk of suit, and every settlement conference in which they participate resulted in either less effective or even nonexistent negotiations. This is precisely the situation that Federal Rule 408 is designed to avoid. In Federal 408, this is a concept that is so important that it's codified as a rule. And 408 provides that it forbids the omission of statements made during settlement negotiations to prove liability or lack of liability. Your Honor, rebuttal time, you know, it's okay with me. Oh, I'm sorry. No, no, you don't be sorry. I'd rather wait for a rebuttal. Thank you, unless anybody else has any questions. Thank you. Thank you, Judge. Mr. Wojcicki. May it please the Court. My name is Ron Wojcicki, and I represent the appellee Christopher Mile and Theodore Weiser. Christopher Mile is really the subject of this appeal. Mr. Davis has raised a number of issues. And let me start with the one, Your Honor, Judge Keeney raised about sanctions, because when you ask the question, essentially, what's the story behind these sanctions, his response was to say, well, we responded. He neglected to say what the circumstances were in accordance with that response. And by the way, when Mr. Davis wrote his initial brief, it wasn't clear what sanctions he was talking about. And the sanctions we're talking about are $2,156 for legal fees incurred in filing a motion to compel. The circumstances that led to that motion to compel are set forth at the entry that begins on page 22 of the short appendix. And in that entry, where the Court explains why sanctions are awarded, the Court notes that, this is on page 2, after multiple empty promises to respond by Mr. Davis, the Court held a telephonic status conference on April 29th, 2013. Responses to interrogatories and requests for reduction were due on March 20th. Multiple empty promises, the pleadings show, eight different times he promised to deliver that discovery, and he didn't. We got the magistrate on the phone with Mr. Davis, and he agreed to serve them by May 1. But as the Court notes, Mr. Davis failed to fulfill his promise. Then we needed to file a motion to compel, which we did. Then there was another conference with the Court, and you will see in docket 92 where the Court says, during this conference, Mr. Davis acknowledged that he was in violation of the Court's order, acknowledged that sanctions were in order, and now he cites a manufactured after-the-fact excuse for not producing discovery and for this Court to set aside sanctions. And by the way, even after the motion to compel and another order to produce, it wasn't produced timely. It was initially ordered in again on June 14th. It wasn't produced then. A one-day extension, which actually was for a weekend, was for June 17th. It wasn't produced then. And what was produced at 11.55 p.m. was something that purported to be responses, but it wasn't. It was an attachment dealing with something completely different. And the Court said, and Mr. Davis agreed that sanctions were in order, and now he's asking this Court to reverse. When you examine carefully each of the 14 or so issues that he has raised on appeal, none of them withstand scrutiny any more than that one. He speaks generally. He speaks raising all sorts of different issues. But when you look at what actually happened, what actually happened is you have a plaintiff, Wayne and Canvas, who files a complaint in nine counts but asserts approximately 14 different claims, none of which have the slightest bit of merit. And then, as the Court noted, he floods the Court with motions and litigation for the next three years. And then he brings to this Court approximately 14 issues on appeal. None of them have merit. And I want to address some of them. Did the magistrate judge recommend sanctions because the discovery responses were substantively insufficient and that they didn't itemize the damages, or because they were one day late? No, it was because they were initially due on March 20th. Mr. Davis agreed to produce them after several empty promises on May 1. He failed to fulfill that promise. That's when the magistrate had the conference where there was an agreement that sanctions were in order. I'm looking at page 25 of the short appendix at the end of the first paragraph. Well, in the first paragraph, the magistrate judge notes that the majority of the conduct that the defendant complained of has already been sanctioned. And then the magistrate judge says, in fact, the only new allegations concern plaintiff's one-day delinquency in complying with that order. And so this is an independent sanctions order for the one-day delinquency. And my question is, were the sanctions imposed because, A, the responses were one day late? B, that the responses were substantively insufficient? Or, C, both A and B? Well, as you see from this order, this is a recommendation for sanctions. It's a very simple question. Just answer the question first and then explain. The sanction of the $2,156, which is what arose out of this and which is what they're appealing, as I understand their reply brief, is not because of that. It's not because of any failure to itemize damages. It's because of that course of conduct of not delivering on May 1. And that was what was subsequently sanctioned. So the plaintiff is appealing the sanctions in the June 7, 2013, order and not the September 23, 2013, order? There are, in fact, no sanctions awarded in this order. What we were requesting was one of the things that was requested at the time was a dismissal. And that wasn't granted. What we were requesting were fees associated with the motion to compel. And that's what was granted. In what order? Fees for the motion to compel. No. What's the date of the order? There are many orders here. And it's partly not your fault that it's confusing what's being appealed. But let me ask you, what sanctions order do you think is being appealed? Well, in their initial brief, I had no idea. In the reply brief, they focused on document 155. That's the document where the court, as I just went through, went through this course. And then what's not here is docket 92, where the court says, I'm ordering sanctions on the motion to compel, and Mr. Davis agrees to it. And that's the $2,156 that is ultimately awarded. And is that order in the short appendix? I don't believe so. But I'm not sure. Mr. Davis prepared the short appendix, and what's there is hard to understand where it all fits. OK. What I'd like to go to are the other issues which he discussed, if the court permits, because he says that the big issue here is the summary judgment issues. Let me just get on sanctions a minute. On what basis should we affirm the sanctions? The $2,156 on the basis that they were not provided in accordance with the order of the court, and we had to file a motion to compel. Nothing to do with time. Pardon? Nothing to do with timeliness of the response, but the response itself. No, it's precisely because they weren't produced timely that we had to file a motion to compel. Nothing was produced timely, ever. And the whole itemization issue is an after-the-fact rationalization, because itemizing some of the expenses here required some discovery. It goes back to my question. On what basis, if you were writing an opinion affirming that, what would the basis of the affirmance be? That the trial judge did not abuse her discretion in light of the failure of the defendant, excuse me, of the plaintiff, to produce discovery timely and required the filing of a motion to compel. Thank you. Mr. Davis's primary argument on summary judgment is that the burden never shifted with respect to the elements of the numerous claims that he has asserted. What the Supreme Court said in Celotex is the movement's initial burden may be discharged by showing, that is, point out to the district court that there is an absence of evidence to support the non-moving party's case. You will see in Document 265, which is our brief in support of the motion for summary judgment, that's exactly what we did. In our table of contents, every issue is there is no evidence to support the claim. All of them, and each of them individually. In arguing them, we talked about specific elements, but all of them assert no evidence to support the claim at large. And this court, in the case of Madrowski v. Pagotto, acknowledged that the burden shifting that's required by Celotex is a low bar. It was satisfied in Pagotto where the plaintiff asserted that there was a complete or the movement asserted there was a complete lack of proof concerning all of the essential elements of the counts in plaintiff's first amended complaint. That did the trick. Here it did so as well. How long has this suit been in litigation? It was filed in November of 2011. 2011? Correct. So it's five years. Correct. It's five years now. And so when we, and obviously the purpose of a motion for summary judgment is, particularly when you're saying you've got no evidence to support your claims, it's time for the plaintiff to put up or shut up. And when the district court looked at the response and found there really wasn't any evidence and found it not only in dealing with Mr. Miles' motion, but also subsequently on Mr. Weiser's default. He was not able to afford counsel and he was subsequently defaulted. And liability was found as a result of the default, but the court looked to see whether there was any, in fact, sufficient statement of a claim or evidence to support the claim. Either in what was presented at trial or anywhere else in the record that there wasn't. The court pointed to, specifically the issue as to some of these claims, that there was no proof of pecuniary loss, which is one of the requirements for a claim under the Indiana Crime Victims Relief Act. Mr. Davis suggests that he wasn't alerted to this issue, but in his response he discusses pecuniary loss on three different occasions. He's clearly alerted to the issue by the filing that was made. And the court said there isn't any evidence. There wasn't any evidence of pecuniary loss presented in response to the motion for summary judgment. There wasn't any evidence of pecuniary loss when Mr. Weiser was defaulted on these claims and the court found no damages because there was no pecuniary loss. There is no evidence of record of any pecuniary loss in this case associated with any of those claims. And I would note that obviously this court, in determining whether to affirm or set aside a summary judgment order, may do so not only on the basis asserted by the district court, but on any other basis supported by the record. And I think the court will find that there are multiple other bases supported by the record, including the ones that were specifically argued in our motion for summary judgment. I think it is, I think, relevant to note that we had a four-day jury trial here on abusive process. And I'm going to talk a little bit more about the abusive process claim in a minute. But a fundamental basis of the abusive process here is that there was no genuine basis or legitimate basis for any of these claims. If there had been such evidence, it could have and should have been presented to the trial and considered by the jury. But there wasn't and isn't. What there is with respect to abusive process is compelling evidence. And Mr. Davis makes what is essentially a legal argument saying in his appeal that the district court should have granted his motion for summary judgment on Mr. Miles' abusive process claim and should have granted his motion for a directed verdict on Mr. Miles' abusive process claim because it doesn't meet the legal requirements. What he fails to say is that there was any error in the judge's jury instructions on abusive process. What the judge gave is precisely the instruction that he wanted, precisely the instruction that sets forth the law, including this improper process notion. He tendered the instruction? Pardon? He tendered the instruction? I don't know whether he tendered it, but he acknowledged in his reply brief the court issued the model instruction, an instruction that is 100 percent consistent with the case law identified in the above-referenced objections and equally consistent with WNC's position throughout this litigation. My question was, is it his instruction or your instruction or the court's instruction? I frankly don't remember whether he proffered that instruction or not. But it would be important, wouldn't it? If he tendered the instruction, he can't complain about it. It would be important, and he's not complaining about the instruction. Oh, okay. He's complaining about the failure of a directed verdict and the failure of a grounded version. I thought you were talking about complaining about the instruction. No, what I'm saying is he agrees that the instruction was right. When the jury found his clients liable for abusive process, it was pursuant to a correct statement of the law on this element of improper process. And what he fails to note is that the case law in Indiana is very clear that improper process can be not only when the complaint of acts were procedurally or were not procedurally proper, but also when they were substantively not proper. And the case of display pictures specifically holds that a trial judge could have inferred a misuse of process from a finding of lack of probable cause. And in the state of Mayer v. Lack, the court acknowledges that an action's lack of validity can be highly relevant in examining an abusive process claim. And in Lindsey v. Jenkins, precisely where you have frivolous, groundless, and unreasonable claims, the court there reversed summary judgment for defendant because that satisfied the assertion of the elements, including the improper process element under Indiana law for abusive process. I know my time is limited, and I'm happy to address any issue that the court is concerned with. But I'd like to just invite the court to look carefully at the full record and not just what you see in what is in the brief. This is a case that was started, a lawsuit that was started, because, as the president of Wayne and Canvas said, because he wanted to close Mr. Miles' business down. Not because he expected to win, but because he wanted to close it down. And he was going to do it not only by forcing him to incur more costs than he could afford, but also by having, and these are his words, that he confirmed at trial and at deposition, by having his asshole lawyer do it for him, if they didn't do it voluntarily. And then he proceeds to assert all these claims that are meritless, to flood the trial court with litigation, and now to flood this appellate court with 14 appellate issues. The jury listened closely to the evidence in this case. It was a compelling case for abusive process, based in part on frivolous claims, based in part on an ulterior motive. There was no basis for any of the claims they asserted, including the trademark and the related trademark claims, because there was implied consent during the entire time that Mr. Mile and Mr. Weiser used the Wayne and Canvas trademark. And when I say implied consent, Mr. Davis' clients came out and personally participated in the opening of the business. They put the business on the website, including the events that were being held. Can I ask you a question about the unfair competition claim? Sure. So the district judge granted summary judgment on the unfair competition claim on the ground that the plaintiff did not respond to the defendant's argument regarding likelihood of confusion. Assume for the sake of argument that that rationale was incorrect. But I also know that you received a jury verdict on the trademark infringement claim. Does the jury verdict and the finding of no liability on the plaintiff's trademark infringement claim necessarily extinguish the unfair competition claim on the merits? In other words, is it conceivable that a jury, a reasonable jury, could have found for the defendant on the trademark infringement claim and for the plaintiff on the unfair competition claim, or would one necessarily have to follow the other? My belief, Your Honor, is that it does extinguish, because unfair competition in this context where he's relating it to the false designation of origin, which is the other claim on which the jury refused to grant, found against the plaintiff. And that's the argument that he argues in the two-sentence paragraph relating to unfair competition. What he never explains to the trial court or to Your Honors on appeal is whether his unfair competition claim is under state law or federal law. He never talks about the evidence that supports it. It is simply another throw-in claim like the 13 or 14 others. I know my time is up, but I respectfully ask this Court to put an end to this abusive litigation and not send it back to let them continue it. Thank you, Counsel. Mr. Davis, how much time? You have five minutes. Thank you, Judge. I just wanted to hit a couple topics real quick. This headings versus what the actual document says, that was an argument that they raised for the first time on appeal. The only place they can point to in the document where they say that they challenge all the elements as to each claim is the heading. They lack evidence to prove a claim. However, if there's no likelihood of confusion, then you technically lack evidence to prove a trademark infringement claim. You don't need to lack evidence on every element to have no evidence to prove the claim. You can also lack evidence as to one element. What happens is that every time the heading happens, when you go into the text, they explain what they mean. You lack evidence because you lack evidence of a likelihood of confusion. They don't talk about any other elements. They directed us as to what we were supposed to respond to. So those headings usually don't even control. They're just guideposts as to what issues we're going to be dealing with when we get into the meat. The actual substance of their arguments did not focus on all of the elements. The other issue is the name that he called me, I don't believe was referring to me, just so the court knows. In any event, they argue that there have been cases in the past that have found that where you lack probable cause, you might have an abuse of process claim. That is true. When you bring a claim that you know you cannot win on, that you know lacks merit, then you are abusing the process because you are not using the process for the legitimate purpose of obtaining a judgment. However, there's two points on that. Number one, there is no evidence in this case that we lack merit with our claims. The judge struck the judicial notice, so that can't be before the jury. Furthermore, the settlement negotiations are not properly in front of a jury. If the full disclosure was, I don't care if we win or we lose, I want you guys closed. Now, that might sound shocking to everybody, but these people were given a business model that they were supposed to own in joint partnerships with my client. They were the first ones in California. Then two weeks, and then one day after the launch, they cut my clients out of every part of the business. They refused to sign documents that they needed to operate my client's business. My clients did want to close them down. That's what we asked the court to do. We asked the court to grant us equitable relief according to the terms of the planned arrangement. We wanted the court to close them down. They make it sound like that is a bad thing, but that is the relief that we requested from the court. He did bring up, by the way, the sanctions order is not really a major part. It was just the first thing in this case a couple of years after the case had started that snowballed. The sanction order opposing counsel filed the motion to compel for the purpose of sanctioning us because he said that we did not respond in full to the discovery. Which sanctions order are you appealing, docket number 155 or docket number 97? 155. Does 155 impose monetary sanctions? 155 imposes sanctions, but it doesn't identify the amount of sanctions until a later time. I believe that in our short appendix we identify that as a group of orders because we consider that to be the order that granted the sanctions but not the order that calculated them. Another issue is this implied consent. This is a really crucial issue. By the way, it can't be said that our claims don't have merit. Our claims must have merit or a trademark infringement never would have gone to the jury. It went to the jury over a request for a directed verdict by opposing counsel. We were successful on beating their franchise fraud claims, two of them. We were successful on defeating their cancellation of our trademark claim, which lasted three years, several motions to dismiss, and a motion for summary judgment later. Those kinds of claims, an abusive process claim and a cancellation claim are claims that keep people in litigation. If we would have lost that claim, every single one of the 50 licensees that operate a whining canvas brand and the 500 families across the country would be severely damaged because we would no longer have a protectable trademark. So we were very successful in the litigation except with regard to the abusive process claim. But another point is the instruction was not tendered by us or opposing counsel. It was a model rule instruction. Throughout the entire litigation, we have argued that you cannot have an abusive process. Who brought it up? We raised the abusive process. Oh, who brought the model rule up? The judge. We were arguing so much over the abusive process claim that the judge just said she's going to use the model rule. When I looked at the model rule, I said that is exactly consistent. Did you object to that? I'm sorry, Your Honor? Did you object to that? There was no objection to the model rule, and it's not on appeal. Our objection throughout the entire litigation on that issue is this. There are two steps to an abusive process claim. You must first show that we have an abusive process. Your time ran out. If there's any other questions, thank you, Your Honor. Thank you, Counsel. The case will be taken under advisement. I'm ready.